[No. 3833. Decided December 10, 1901.]

A. C. MORRISON, *Respondent*, v. BLUE STAR NAVIGATION COMPANY, *Defendant;* H. J. FITCH *et al., Appellants,* MARSTON TEBBETTS, *Receiver, Respondent.*

CREDITOR'S BILL — PARTIES.

A creditor's bill is not demurrable because brought by one creditor in his own behalf alone, although it mentions other creditors and contains no invitation to them to join.

CORPORATIONS — CONVERSION OF ASSETS BY OFFICERS — PERSONAL LIA-
     BILITY TO CREDITORS.

The general officers of a corporation who direct its business cannot use the corporate name and property for their individual enterprises, and avoid answering personally to the creditors of the corporation, or others who are injured by their misfeasance.

SAME — ACTION FOR CONVERSION — PARTIES DEFENDANT.

In an action for fraudulent conversion against the president and general manager of a corporation, the failure to join as a party defendant another who was alleged to have engaged in the

misappropriation of the funds and to have received a proportion thereof, is not ground for demurrer, since recovery may be had against one or all of the wrongdoers.

Appeal from Superior Court, King County.—Hon. JESSE P. HOUSER, Judge. Affirmed.

*R. B. Albertson* and *Strudwick & Peters,* for appellants.

*Patterson & Easly* and *McClure & McClure,* for respondents.

The opinion of the court was delivered by

REAVIS, C. J.—Plaintiff, Morrison, commenced suit to recover the sum of $1,500 alleged to be due him for wages as purser on a vessel of the defendant Blue Star Navigation Company. He also made defendants in the action, appellants Duval and Fitch, who were, respectively, the president and general manager of the corporation Blue Star Navigation Company. The complaint alleged the incorporation of the navigation company under the laws of New Jersey; that Duval and Fitch were its general officers and had exclusive control over the affairs of the company; that in June, 1889, defendants Duval and Fitch, in the name of and for the use and profit of the defendant navigation company, chartered the schooner "Hera" for a voyage to the northwestern coast of Alaska and return, and purchased a cargo consisting of lumber, merchandise, and other articles, and contracted in the name of the company to pay about the sum of $10,000 therefor; that the voyage was safely made, and the cargo disposed of, and a large sum was realized as profits thereon; that thereafter defendants Duval and Fitch pretended that the voyage of the schooner Hera and the purchase of her cargo was an individual and private venture, and

that the navigation company had no interest therein, or in the profits derived therefrom; that the navigation company, through its general officers, connived and colluded with defendants Duval and Fitch, and that each and all of them well knew that the purchase of such cargo and the profits thereof belonged to the navigation company; that the only property other than the proceeds of said voyage belonging to the company was of little, if any value; that, as plaintiff is informed, the navigation company is indebted to various other persons as creditors in a sum exceeding $10,000, and unless a recovery be had of the amount converted by Duval and Fitch of the funds of the navigation company so appropriated by them from the proceeds of the voyage of the Hera, plaintiff and other creditors can obtain no satisfaction of their demands. There are other allegations setting forth specific charges of fraud against the general officers of the navigation company; that such officers knew the condition of the affairs of the company by virtue of their control of its management, and conducted the business in the name of the corporation, but, after the voyage had proved successful and large profits were derived therefrom, that a fraudulent plan was conceived and carried out to claim that the purchase of the cargo of the Hera and the voyage to Alaska was the private enterprise of Duval and Fitch. After the commencement of the action a suit was commenced by defendant Fitch against the corporation upon demands alleged to be due him in the service of the company, and allegations of insolvency of the company were made. Whereupon the intervenor, Tebbetts, was appointed receiver, and, after his appointment, filed his complaint in intervention in this cause, substantially setting up the same facts as those alleged in the complaint, but

denying the amount of the plaintiff's claim against the company. Intervenor prayed, as in the complaint, that Duval and Fitch be adjudged to have misappropriated and concealed the funds arising from the voyage of the Hera; that they be required to account for the same; and that he, as receiver, recover the entire amount which was found so in their possession for the benefit of the creditors of the navigation company. Demurrers were interposed to the complaints of each, the plaintiff and intervenor, on the ground that they did not state facts sufficient to constitute a cause of action, and gave no right of intervention to the receiver. The demurrers were overruled, and the first exception by appellants is to this ruling.

1. It is maintained by counsel for appellants that plaintiff's action is not a creditor's bill wherein he sues for the benefit of all of the creditors of the corporation. It is true the complaint does not state that it is in behalf of the creditors, and that it mentions other creditors. This would not seem to be very material. In 5 Enc. Pl. & Pr., p. 558, it is said:

"As has been seen hereinbefore, in ordinary suits *inter vivos,* a creditor is permitted to sue in his own behalf alone, and in such cases the bill need not state in whose behalf it is filed, or contain any invitation to other creditors to join."

In the case of *Dunlap v. Rauch,* 24 Wash. 620 (64 Pac. 807), this court had a similar complaint before it, to which much the same objections were made as are now urged here. In that case, it is true, the complaint did not disclose other creditors or inadequacy of assets to meet all claims against the corporation, but no importance was attached to the failure to mention other creditors. A receiver was afterwards appointed at the suit of a stock-

holder, and the plaintiff then requested that the receiver be substituted for herself. The court, without any formal order with reference to the matter, proceeded to try the case and entered decree in favor of the receiver for the benefit of the creditors, including plaintiff, and against defendants. No error is perceived in the ruling of the court upon the demurrers.

2. If the charge of fraudulent conversion was maintained against Duval and Fitch, the president and general manager of the corporation, it would be immaterial that Ryan, who was alleged to have engaged in the misappropriation of the funds, and who received a proportion thereof, was not made a party to the action. It is elementary that a recovery may be had against one or all of the wrongdoers, and it is equally well settled that the general officers of a corporation who direct its business cannot use the corporate name and property for their individual enterprise, and avoid the responsibility to answer personally to the creditors of the corporation or others injured by their misfeasance.

The evidence heard at the trial embraced some seven hundred pages of typewritten matter besides exhibits. The issues involved are almost exclusively those of fact. There is much conflict in the testimony. The court made very complete and detailed findings of fact. In view of the substantial conflict in the testimony, we are not inclined to disturb the findings of fact. The court found, in substance, that defendant Duval was one of the original incorporators and a large stockholder in the Blue Star Navigation Company; that the stockholders resided at and in the vicinity of the city of New York; that the company, when organized, elected its officers from the stockholders, and paid large salaries to them, so that a large proportion of the amount subscribed by the stockholders, if not all

such amounts, had been actually repaid to them; that the company engaged in the transportation business between Pacific coast ports, and also had trading posts on the Yukon river; that it carried on its business during the year 1898, and during that year the company's affairs were directed by R. S. Ryan; that the business for 1898 was not profitable, though during that season business was commenced and trade connections and transportation business established; that at the close of business in the year 1898, the stockholders met in the city of New York, and the condition and affairs of the corporation were considered; that the stockholders were all dissatisfied with the management of the business, and thereupon defendant Duval was elected president, and was practically given full charge of the affairs of the company; that he went to Europe, and borrowed a further sum of money for which stock was to be issued, but such stock as a matter of fact was not issued; that from the money borrowed Duval paid off the obligations of the company which were covered by notes to the company indorsed by him in the sum of $10,-000; that Duval appointed Fitch general manager of the company, and fixed his salary at the sum of $200 a month; that Duval and Fitch kept a public office of the corporation in the city of Seattle; that a secretary was employed at $200 per month, and a stenographer at $50 per month, and the rent of the office was $150 per month; that they occupied the office of the company, using its stationery and employees; that thereafter they continued to make contracts in the name of the company, and engaged in other business for the company in addition to that of the voyage of the Hera; that the expenses and salaries of the officers were charged up to the navigation company. It was also found that Duval and Fitch, in connection with Ryan,

through the office of the company, purchased supplies and shipped lumber for the purpose of erecting a hotel in Alaska; that their business was done and shipments were made in the name of the company, but that they failed to fully disclose the nature and extent of the business, so that the court is unable to determine the amount of the lumber or the supplies and stores that were thus shipped, or the various sums received therefrom, though the court found a large sum of money was invested in the venture and a large amount received therefrom. In fine, the court concluded, after hearing and allowing offsets for expenditures made attending the voyage of the Hera and the transportation and disposition of her cargo, that the profits of that venture and the amount appropriated by Duval and Fitch of the funds of the corporation was $26,-560.34, for which judgment was entered against the said defendants in favor of the receiver. The court further found that, by reason of the concealment and failure to account for the proceeds derived from the hotel and other ventures, as mentioned, Fitch and Duval should be postponed in the distribution of the funds from the Hera venture to the claims of other creditors of the corporation.

Having concluded that the findings of fact are sustained by the record, no reversible error is perceived in the conclusions of law or the decree, and it is affirmed.

FULLERTON, ANDERS, DUNBAR and MOUNT, JJ., concur.